# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER A. SCANNELLI | : | Case No. 3:16-cv-00482 |
| o/b/o SKA and CK, minors, | : | |
| o/b/o SHAWN O. KANE (deceased), | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| NANCY A. BERRYHILL, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

Plaintiff Shawn O. Kane applied for Disability Insurance Benefits and
Supplemental Security Income in June 2013, asserting that he could no longer work due
to psoriatic arthritis, wrist injuries, and pain in his foot, back, and knee.  An
Administrative Law Judge (ALJ), Eric Anschuetz, conducted a hearing where both
Plaintiff and a vocational expert testified.  Shortly thereafter, the ALJ concluded that
Plaintiff was not eligible for benefits because he was not under a "disability" as defined
by the Social Security Act.  Plaintiff filed this case challenging the ALJ's non-disability
finding.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #15), Plaintiff's Reply (Doc. #16), and the administrative record (Doc. #6).

## II.    Background

### A.    Plaintiff

Plaintiff was 39 years old on date his alleged disability began (January 31, 2011). He graduated college with a triple major, including administration, marketing, and management.  Before he applied for social-security benefits, he worked as a claims assistant, a patient specialist, and a managed care representative.  In September 2015, he died from hypertension and arteriosclerotic cardiovascular disease.  (Doc. #6, *PageID* #45).  Plaintiff is survived by his ex-wife, Jennifer A. Scannelli, and two daughters, ages 12 and 14 at the time of ALJ Anschuetz's hearing.[2] *Id*. at 115.

Plaintiff was 6' 3-1/2" tall and weighed 280 pounds.  *Id.* at 78.  He testified that his last employer, a funeral and cemetery business, terminated his employment because he could not help carry heavy caskets.  *Id.* at 84-85.

He further testified that in 2007, he underwent surgery on both his feet following a car accident.  His described the accident in dramatic detail along with the injuries he sustained.  *Id*. at 100-01.  His injuries included torn ligaments and tendons.  He also smashed his right hand during the accident.  *Id.* at 99.  He explained that during surgery,

---

[2] For the sake of simplicity, "Plaintiff" in this Report refers to Shawn Kane even though the present Plaintiff is Jennifer Scannelli, on behalf of Shawn Kane and his daughters.  References to "Plaintiff's contentions" advert to those presently advanced by Scannelli on behalf of Kane.

"[t]hey sawed both my feet in half and my heels and screwed them back together." *Id.* at 98-99.

Plaintiff identified his worst impairment as having "no equilibrium." *Id.* at 108. He stated he was unable to carry a box and walk at the same time. *Id.* If he did not have his cane, he was "kind of all over the place." *Id.* He testified that he went through stages in which his foot would get so swollen so much that even a size "16 DDD" would not fit.

Plaintiff informed the ALJ that he used his cane "all of the time." *Id*. at 11. He explained, "I have seven of them around the house. I keep one in my car, my parents' car, my best friend's car." *Id*. at 111. He added, "I use the cane every time I walk. I'll go for about four or five feet…." *Id.* To help improve his condition, Plaintiff lost 100 pounds during 2014 through 2015 by exercising four days a week and eating healthy. *Id.* But he gained it back after he was prescribed Prednisone. *Id*. at 78.

Plaintiff medications included Stelara for psoriatic arthritis and Sulfasalazine for psoriasis. He also took Methotrexate, Gabapentin, Tramadol, and "two or three others." *Id.* at 110. He testified that "sometimes" his medications helped and sometimes they didn't. *Id.* He had recently received new injections and it would take up to four month before he could "start feeling halfway decent again." *Id.*

Plaintiff testified that he lived in an apartment with a basement and a second floor but he could not go up any stairs. *Id.* at 115. He had a driver's license but stopped driving in January 21014 after he hit the gas pedal instead of the brake pedal. *Id.* at 115-

16.  His mother or friends drove him everywhere.  His friends took him places once or twice a week.  *Id.* at 117.

Plaintiff estimated he could lift "over about 6 pounds" using his arm and hand.  He could not use both his left and right hands.  He soaked his right hand three to four times a day.  He could walk around a block.  *Id.*

As to household chores, his mom and a friend (who is a chef) cooked a lot of his meals.  *Id.* at 120.  His oldest daughter and mother did his laundry and his daughters washed the dishes.  *Id.*

Plaintiff explained that it took him about 45 minutes to get dressed.  *Id.* at 89, 126.  He needed to sit down to put on his underwear, socks, and jeans.  Someone else needed to button his jeans.  He did not shower if no one else was in the house.  Two and a half years before the ALJ's hearing, Plaintiff fell in the shower and was there for two and a half days before anyone found him.  He noted that he could not get up and that his body "locked up."  *Id.* at 127.  A friend eventually found him, but he did not go to the hospital afterwards because he said he was "fine" after he got out of the shower.  *Id.* at 128.

## B.     Joseph Smith, M.D.

Plaintiff began seeing Dr. Smith on August 7, 2014 for primary care.  (Doc. #6, *PageID* #878).  In March 2015, Dr. Smith opined that Plaintiff could lift and carry a maximum of five pounds rarely (meaning "less than 1 hour a day.").  *Id.* at 656.  He could not use his right hand/arm for reaching, his right hand for "seizing, grasping, or

turning…," or fingering. *Id.* at 656-57.  He could occasionally use his left hand/arm for reaching.  *Id.* at 656.

As to Plaintiff's postural limitations, Dr. Smith believed that in an eight-hour workday, Plaintiff could stand for one hour, walk for one hour, and sit for two hours.  *Id.* at 657.  He could not use his feet for repetitive movement (like operating foot controls), and he could not bend, squat, crawl, or climb steps or ladders.  *Id.* at 657.  According to Dr. Smith, Plaintiff would have multiple absences from work in a given month.  *Id.* at 658.

In a March 2015 letter, Dr. Smith described Plaintiff's health problems, medications, and disability status:

> Shawn's primary disabling condition is psoriatic arthritis which causes severe joint pain.  This has required hospitalization at Ohio State for high dose steroids to keep it under control.  He also suffers from hand pain and lower extremity pain, which are chronic in nature, from a motor vehicle accident many years ago.  He has required multiple lower extremity surgeries.  This has resulted in chronic pain and weakness.

> He also suffers from generalized anxiety disorder, diabetes mellitus II, hyperlipidemia, and hypertension.  Due to these complicated and intertwined conditions, he is on multiple medications to control the conditions and the pain.  I do believe that these medications decrease his overall cognitive ability and can be sedating….

> Due to his significant debilitating conditions, severe psoriatic arthritis, chronic pain and chronic pain medication usage, he is one of the few individuals that should be considered for complete disability….

*Id.* at 655.

Four months later, Dr. Smith wrote on prescription pad that Plaintiff was "unable to walk properly without the use of a cane for balance due to equilibrium and previous foot surgeries." *Id*. at 985. He used the cane "100% of the time when walking more than 10 [feet]." *Id.*

## C. Richard Ward, M.D.

Dr. Ward examined Plaintiff on one occasion in February 2015. *Id.* at 649-54. Dr. Ward reported that Plaintiff's problems stem from psoriatic arthritis. He had undergone surgery on his feet, wore a splint of his right wrist, and ambulated slowly with a cane in his left hand. *Id.* at 649. Dr. Ward concluded that Plaintiff "cannot begin to ambulate normally." *Id.* at 650. And he opined, "I do not believe there is any combination of sit, stand, or walk option that would add up to a normal eight hour work day for him. As mentioned, Shawn O. Kane certainly has severe limitations on his ability to be up on his feet and he cannot begin to ambulate normally. Shawn O. Kane, in my opinion, is incapable of returning to any type of work." *Id*. at 649-50.

Dr. Ward believed that Plaintiff could rarely lift and carry up to five pounds but nothing heavier. *Id.* at 651. He could rarely use his right arm/hand for reaching. He could occasionally reach, handle, and finger with the left hand. He could not use his right hand for reaching or fingering. *Id.* at 651-52. Dr. Ward opined that he could do "no" standing or walking during an eight-hour workday and work situation He could sit for

only three hours of an eight-hour workday.  *Id.* at 652.  Dr. Ward found that Plaintiff's condition had existed since January 31, 2011, and he concluded that Plaintiff was likely to have five or more absences per month.  *Id.* at 653.

### D.    Marti Kahkonen, M.D.

In June 2015, Dr. Kahkonen examined Plaintiff and sent a report to the Ohio Department of Job and Family Services.  *Id.* at 915-21.  Dr. Kahkonen checked boxes indicating that Plaintiff used a cane and his gait was abnormally "wide based."  *Id.* at 918.  Dr. Kahkonen tested Plaintiff's range of motion and strength.  He concluded that Plaintiff had decreased strength and range of motion in his right hand and both feet.  *Id.* at 919-20.  Dr. Kahkonen also concluded that Plaintiff was extremely limited in standing, walking, pushing/pulling.  His fine-motor activities with his hands, his repetitive foot movements and his ability to sit were moderately limited.  *Id.* at 920.  He would be unable to lift more than ten pounds at one time and could occasionally carry small objects.  *Id.* at 921.

Dr. Kahkonen checked a box indicating that Plaintiff did not appear to be exaggerating his symptoms or behaviors during the exam or testing.  *Id.*  In the end, Dr. Kahkonen reported that Plaintiff had "severe plaque psoriasis with obvious involvement of [right] hand/wrist and bilateral ankles."  *Id.*

### E.    Mujeeb Ranginwala, M.D.

In January 2015, treating rheumatologist Dr. Ranginwala reported that Plaintiff

had been his patient since 2007.  Dr. Ranginwala also reported that Plaintiff had been

diagnosed with severe psoriatic arthritis and "[t]he disease was under poor and

incomplete control."  *Id*. at 647.  Control of Plaintiff's severe psoriatic arthritis was not

controlled despite medications including Embrel, sulfasalazine, and prednisone.  He

further indicated that Plaintiff would "need medication long term."  *Id.*

F.     **Teresita Cruz, M.D.  & Anne Prosperi, D.O.**

In August 2013, Dr. Cruz reviewed Plaintiff's medical records for the state

agency.  Dr. Cruz believed that Plaintiff could occasionally lift/carry up to 50 pounds and

frequently lift/carry up to 25 pounds.  Plaintiff could stand, walk and/or sit for 6 hours in

an 8-hour workday.  He could never climb ladders, ropes, and scaffolds.  He was limited

to occasional crouching or crawling due to morbid obesity.  *Id.* at 207.

Dr. Cruz noted that she based her opinions on Dr. Ranginwala's description of

Plaintiff's psoriatic arthritis as clinically stable.  *Id*. at 208.  Dr. Cruz also noted

Plaintiff's history, review of symptoms and physicals have all been negative.  *Id*.  She

categorized Plaintiff as morbidly obese with a body mass index of 42.2.  Dr. Cruz

indicated that, at the time of her record review, Plaintiff was "currently working."  *Id.* at

208.  Dr. Cruz found Plaintiff was partially credible.  *Id*. at 206.

In January 2014, Dr. Prosperi reviewed Plaintiff's record and confirmed Dr.

Cruz's assessment.  *Id.* at 232-34.

## III.    "Disability" and The ALJ's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same both types of benefits. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job, and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.* at 469-70.

As noted previously, it fell to ALJ Anschuetz to evaluate the evidence pertinent to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §404.1520. He found (Step 1) that Plaintiff met the insured status requirements through September 20, 2019. He determined (Step 2) that Plaintiff had the following severe impairments: psoriatic arthritis, obesity, and diabetes mellitus type II. (Doc. #6, *PageID* #55). He further found (Step 3) that Plaintiff did not have an impairment or combination of impairments that automatically entitled him to benefits under the Commissioner's Listings. *Id.* at 58; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ next determined (Step 4) that despite Plaintiff's impairments, he retained

the ability—his residual functional capacity—to perform a limited range of medium work as follows:

> [He] can lift up to 50 pounds occasionally and 25 pounds frequently. He can stand and/or walk a total of 6 hours in an 8-hour workday. He can sit for a total of 6 hours in an 8-hour workday. [He] can never climb ladders, ropes, or scaffolds, but has an unlimited ability to climb ramps and stairs. He can frequently balance. His ability to stoop and kneel is unlimited, but he can only occasionally crouch and crawl. He has no severe mental health limitations that would preclude him from performing basic work activities.

(Doc. #6, *PageID* #58). The ALJ also concluded (Step 4) that Plaintiff could perform his past relevant work. And, because he could perform his past relevant work, he was not under a disability and not eligible for SSI or DIB. The ALJ did not conduct an alternative Step 5 evaluation. *Id*. at 62-63.

## IV.    Judicial Review

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

Plaintiff contends that the ALJ violated the treating physician rule by placing undue weight on non-examining physicians' opinions rather than crediting his treating physician Dr. Smith's opinions. Plaintiff argues that Dr. Smith's opinions were broadly consistent with the opinions provided by Dr. Ward, Dr. Kahkonen, and Dr. Ranginwala.

He further maintains that the ALJ failed to provide good reasons for placing little weight on Dr. Smith's opinions.

The Commissioner contends that (1) substantial evidence supports the ALJ's decision, (2) the ALJ fulfilled his legal obligations when assessing Dr. Smith's opinions, and (3) Plaintiff "does not demonstrate legal error." (Doc. #15, *PageID* #1029). The Commissioner also points out that, as the ALJ found, Dr. Smith's post-hearing prescription note—saying, in part, that Plaintiff could not walk properly without a cane— was not supported by Dr. Smith's treatment notes.

Social security regulations require ALJs to generally extend "greater deference … to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). A treating physician or psychologist's opinions must be given controlling weight when (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted); *see Gentry*, 741 F.3d at 723. If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242

(citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). These factors likewise apply when an ALJ weighs the opinions of non-treating medical sources. *Gayheart*, 710 F.3d at 376.

The Regulations require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544; *see* 20 C.F.R. §416.927(c)(2). This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

The ALJ began his evaluation of Dr. Smith's opinion by placing no weight on the prescription note Dr. Smith wrote in July 2015, which stated, "Pt [Patient] is unable to walk properly without the use of a cane for balance due to equilibrium and previous foot surgeries. Pt uses a cane 100% of the time when walking more than 10 feet." (Doc. #6, *PageID* #s 60, 985). The ALJ reasoned that this note was not supported by Dr. Smith's treatment notes and contradicts Dr. Smith's treatment notes on August 7, 2014 and August 17, 2014. The ALJ also explained, "there is no evidence in any of Dr. Smith's treatment notes that he ever reported that claimant had a problem with gait or station or maintaining balance and needed a cane to assist with ambulation." *Id.* The ALJ's only

other mention of Dr. Smith's opinions pointed to "other statements such as the claimant 'has no use of his right hand.  He cannot write,… He is not able to do any activities…'" *Id*. at 61.  The ALJ found these opinions unsupported by Dr. Smith's records, including Plaintiff's statements to Dr. Smith denying joint, muscle, and back pain.  *Id*.  While the ALJ acknowledged that Plaintiff had occasional pain and swelling, he dismissed these problems because "[they] were not constant to the point where a further limitation would need to be added to the residual functional capacity for being off task or for missing work beyond customary tolerances."  *Id*. at 61-62.

The ALJ's evaluation of Dr. Smith's opinions did not acknowledge or meaningfully consider whether his opinions were entitled to controlling weight under the treating physician rule.  Instead, the ALJ collapsed the two-step evaluation procedure mandated by regulation into consideration of the "supportability" and "consistency" factors.  *See* 20 C.F.R. §§404.1527(c)(1)-(6).  This constitutes error because the "supportability" and "consistency" factors, along with the others listed in the regulations, *id*., "are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight." *Gayheart,* 710 F.3d at 376 (emphasis added) (citation omitted).  Indeed, "[t]he source of the opinion… dictates the process by which the Commissioner accords it weight." *Id*.  The ALJ's procedure ignored this.  Instead, his focus on the supportability and consistency factors leaves it uncertain (at best) whether he addressed, or even considered, the factors applicable to determining whether "controlling

weight" was due this treating psychiatrist's opinions. This uncertainty conflicts with the requirement that the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). As the Sixth Circuit has explained:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotation marks and citations omitted).

Additionally, the ALJ's application of the supportability and consistency factors effectively weighed Dr. Smith's opinions under the same legal criteria under which he weighed the opinions of the non-treating, record-reviewing physicians, Drs. Cruz and Prosperi. *Compare* Doc. #6, *PageID* #s 60-61 *with PageID* #62. This constituted error. Again, "[t]he source of the opinion… dictates the process by which the Commissioner accords it weight." *Gayheart*, 710 F.3d at 376.

The ALJ also found that it appeared Plaintiff asked Dr. Smith to provide documentation regarding his need to use a cane. The ALJ, however, fails to identify any evidence supporting this, *see* Doc. #6, PageID # 60, and there is no indication in Dr.

Smith's prescription note that Plaintiff asked Dr. Smith for documentation. There is, moreover, nothing inherently wrong or suspect for a patient to ask his physician to document specific problems when "[t]hrough Step 4 of the sequential evaluation, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work…." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 377 (6th Cir. 2017) ("It is the plaintiff's burden to prove a disability within the meaning of the regulations."); *see also Montecalvo v. Comm'r of Soc. Sec.*, 695 F. App'x 124, 127 (6th Cir. 2017) (same). The ALJ compounded this problem with dubious overgeneralizations. He emphasized these in bold, suggesting that he strongly relied on speculation rather than evidence specific to Dr. Smith or Plaintiff. He wrote:

> **It appears the claimant went to Dr. Smith after his hearing and said that he wanted proof that the claimant required a cane to walk. Dr. Smith simply acquiesced. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.**

(Doc. #6, *PageID* #60) (bold in original).  Even if such musings were generally true (a highly questionable possibility given the professionalism within the medical community), the ALJ pointed to no authority in the regulations, social-security rulings, or case approving their use in discounting a treating physician's opinions.  More significantly, neither the ALJ nor the Commissioner points to evidence hinting that Plaintiff was quite insistent and demanding in seeking supportive notes or reports from Dr. Smith.  And, the ALJ's finding that Dr. Smith's opinions "**departs substantially <u>from the rest of the evidence</u>**…," *id.* (emphasis in original; underline added)*,* is mistaken because it is so broadly worded.  "[T]he rest of the evidence" presumably means all the other evidence in the record.  But, the information provided by Dr. Ranginwala's report—that Plaintiff's psoriatic arthritis is severe and under "incomplete control," *supra*, §II(E)—is consistent with Dr. Smith's opinions*.*  So it is with Dr. Ward's opinions, reviewed above, *supra*, §II(C), and with Dr. Kahkonen's statement that Plaintiff had "severe plaque psoriasis with obvious involvement of [right] hand/wrist and bilateral ankles." *Id.*  The Commissioner argues that the ALJ properly placed little weight on the opinions of these physicians' opinions.  Doing so, however, the ALJ cherry-picked evidence during times when Plaintiff's psoriatic arthritis was likely in remission, given the fluctuating severity of psoriatic-arthritis symptoms.  *See* The Merck Manual at pp. 448, 817 (17th Ed. 1999) ("Exacerbations and remissions of joint and skin conditions may coincide."; "Psoriatic arthritis often resembles RA [Rheumatoid Arthritis] and may be equally crippling.").

This constituted error given the fluctuating nature of Plaintiff's symptoms caused by psoriatic arthritis. *See Scrogham v. Colvin*, 765 F.3d 685, 696 (7th 2014) (ALJ erred by "never acknowledge[ing] in her opinion the waxing and waning of Mr. Scrogham's symptoms with time."); *see also Sharp v. Barnhart*, 152 F. App'x 503, 509 (6th Cir. 2005) ("'[I]n evaluating ... [an] episodic disease," this court has noted, 'consideration should be given to the frequency and duration of the [disease's] exacerbations, the length of the remissions, and the evidence of any permanent disabilities.'" (quoting *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990)).

During an episode in February 2015 of exacerbated symptoms of psoriatic arthritis, Plaintiff was hospitalized for several days. Treatment notes from an emergency-room physician, a rheumotologist, and a dermatologist confirmed that Plaintiff was in pain due to joint pain and a flare of his psoriatic arthritis. Musculoskeletal exams were positive for severe arthralgias worsening over time (Doc. 36, *PageID* #926); "severe pain and swelling of multiple joints," *id*. at 940; "significant swelling in both ankles…, wrists [and] limited active mobility of wrists and ankles," *id*. at 942; *see also id.* at 946. It was also noted that he had "obvious arthritis of his right ankle, as well as his right hand," *id*. at 932; and "[p]soriasis, psoriatic arthritis with acute exacerbation," *id*. at 936, 939. He was treated with steroids and released from the hospital. Remission of his symptoms is seen in notes from his follow-up exam in late March 2015 ("no sign of psoriatic arthritis."). *Id*. at 954. In May 2015, he again had "active psoriatic arthritis and his

medication were ineffective.  *Id*. at 968.

Because the ALJ failed to apply the correct legal criteria when weighing Dr. Smith's opinions, the presence of substantial evidence (as argued by the Commissioner) does not alleviate the legal shortcomings in his decision.  *See Rabbers*, 582 F.3d at 651. It was error for the ALJ to rely on indications in the record that Plaintiff was symptom free without considering that he suffered from a serious condition that waxed and waned over time.  *See Scrogham*, 765 F.3d at 696; *see also Sharp,* 152 F. App'x at 509; *Gentry,* 741 F.3d at 724 (citing *Minor v. Comm'r of Soc. Sec*., 513 Fed Appx. 417, 435 (6th Cir. 2013) ("reversing where the ALJ 'cherry-picked select portions of the record' rather than doing a proper analysis"); *Germany–Johnson v. Comm'r of Soc. Sec*., 313 Fed Appx. 771, 777 (6th Cir. 2008) ("finding error where the ALJ was 'selective in parsing the various medical reports'").  "Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting, in part, *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)) (internal citations and quotation marks omitted).

Accordingly, the ALJ did not apply the correct legal criteria to, and substantial evidence does not support his evaluation of, Dr. Smith's opinions; and, the ALJ erred by not considering the fluctuating severity of Plaintiff's psoriatic arthritis.[3]

---

[3] In light of the above review and the resulting need for remand of this case, an analysis of the

## VI.    Remand For Benefits

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

parties' remaining arguments is unwarranted.

A judicial award of benefits is warranted in the present case because the evidence of disability is strong while contrary evidence is lacking. The evidence conclusively establishes that the fluctuating severity in Plaintiff's psoriatic arthritis. When active, his psoriatic arthritis forced him to go the hospital where his severe symptoms were well documented. Although the record indicates that Plaintiff might have been capable of employment during his periods of remission (this is in question), his intermittent periods of exacerbation precluded him from full-time employment. In addition, a remand for further administrative proceedings and a hearing would be futile, and would serve no purpose other than delay, because of Plaintiff's death.

Accordingly, reversal of the ALJ's decision and remand for an award of benefits are warranted.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be reversed;

2.  The case be REMANDED to the Social Security Administration under sentence four of 42 U.S.C. §405(g) for payment of benefits; and

3.  The case be terminated on the docket of this Court.


February 1, 2018                              *s/Sharon L. Ovington*
                                              Sharon L. Ovington
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).